**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-07-CV-87-KC** |
| | § | |
| **LUIS POSADA CARRILES,** | § | |
| | § | |
| **Defendant**. | § | |

## ORDER

On this day, the Court considered the "Government's Motion for a Protective Order" ("Motion") (Doc. No. 145), "Miami Herald Publishing Company and the Associated Press's [collectively "the Press"] Motion to Intervene for the Limited Purpose of Opposing the Government's Motion for a Protective Order" ("Motion to Intervene") (Doc. No. 153), and "Defendant's Motion for Production of Government's Log Asserting Nature of Sensitive Materials" ("Motion for Production") (Doc. No. 166). For the reasons set forth herein, the Government's Motion is **GRANTED IN PART**, the Motion to Intervene is **GRANTED IN PART**, and the Motion for Production is **DENIED**.

## I.    BACKGROUND

Defendant Luis Posada Carriles ("Defendant") is charged by an eleven-count superseding indictment with perjury, obstruction of administrative proceedings, and making false statements in a naturalization proceeding. *See* Superseding Indictment (Doc. No. 133) at 1. The charges stem in part from statements Defendant made to an Immigration Judge about his involvement in bombings in and around Havana, Cuba, as well as related statements in a New York Times article. *See id.* at 4-7. Defendant's prosecution has received and continues to receive widespread

media attention.  *See, e.g.*, David Adams, *Release of Anti-Castro Militant Stokes Debate*, Sᴛ. Pᴇᴛᴇʀsʙᴜʀɢ Tɪᴍᴇs (Fʟᴀ.), Apr. 21, 2007, at 1A; Evan Perez, *Cuban Exile Indicted by US,* Wᴀʟʟ Sᴛ. J., Apr. 10, 2009, at A4.

On June 5, 2009, the Government filed its Motion.  The Government seeks a protective order, pursuant to Federal Rule of Criminal Procedure 16(d), "regarding the handling of sensitive but unclassified discovery material that has been or will be disclosed by the United States to [Defendant]." *See* Mot. 1.  The Motion includes a proposed protective order for the Court's consideration.  *See id.* at 8-11 ("Proposed Protective Order").  Specifically, the Government seeks to "limit inappropriate or damaging public disclosure" of sensitive materials, which "include[s] but may not be limited to" reporters' unpublished materials, information involving a foreign government, medical records, and material from an agent's personnel files.  *Id.* at 3 & n.1.  The Government argues that its Proposed Protective Order, which is applicable to unclassified discovery materials the Government would mark as sensitive, effectively prevents unwarranted dissemination while preserving Defendant's rights.  *Id.* at 4-5.

Under the terms of the Proposed Protective Order, Defendant would be prohibited from disseminating sensitive discovery materials to prospective witnesses without prior approval from the Court. and would be prohibited from disseminating sensitive discovery materials to the media under any circumstances.  *See* Proposed Protective Order 2.   Additionally, the Proposed Protective Order would require that any papers filed with the Court involving sensitive discovery materials, as well as any responses to such papers, be filed under seal.  *Id.* at 3.

On June 26, 2009, Defendant filed his opposition to the Government's Motion, arguing that the Government has failed to show good cause for entry of a "broad, blanket protective order" and that its Proposed Protective Order would unduly restrict Defendant's right to prepare his defense.  *See* Opp'n and Resp. of Luis-Posada Carriles to Gov't's Mot. for Protective Order

("Defendant's Response") (Doc. No. 151) at 1-2, 6. In the "Government's Reply to Defendant's Opposition to [the] Government's Motion for a Protective Order" ("Government's Reply") (Doc. No. 152), the Government argues that "the numerous advantages an umbrella protective order has in any large-scale or complex litigation" are present here. Gov't Reply 9.

On June 30, 2009, the Press filed its Motion to Intervene, arguing that it has standing to challenge the proposed protective order, and that the proposed protective order "would unlawfully restrict the [P]ress' First Amendment right to gather the news and receive protected speech" and would "impermissibly restrict[] the public and [P]ress' First Amendment right to access judicial records." Mot. to Intervene 1, 4. In the "Government's Response to Third Parties' Motion to Intervene for the Limited Purpose of Opposing the Government's Motion for a Protective Order" ("Government's Response") (Doc. No. 154), the Government states that it does not oppose the Press's intervention, but that "commonplace protective orders for documents furnished to the defense in compliance with discovery obligations [do not] violate the First Amendment." Gov't Resp. 1-2 & n.1. On July 10, 2009, the Press filed its Reply, stating that it is "not requesting that the parties provide [it] with any discovery documents," but is requesting that parties filing documents under seal justify such sealing and that the Press's attorneys be provided documents the Government deems sensitive so that the Press may challenge whether those documents should be covered by a protective order. *See* "Miami Herald Publishing Company and the Associated Press's [Reply]" ("Press's Reply") (Doc. No. 155) at 4-5 (underline in original). Finally, on July 15, 2009, the Government filed a sur-reply "seek[ing] to underscore how unprecedented and inappropriate the [Press's] proposed relief would be." "Gov't Surreply to [Press's Reply]" ("Government's Sur-Reply") (Doc. No. 156).

On July 16, 2009, the Court requested that the Government produce the discovery material for which it requests a protective order for in camera review, together with "an

explanation providing . . . the interest sought to be protected by each item or group of items of discovery material . . . ."  Order, July 16, 2009 (Doc. No. 157) at 1-2.  On August 14, 2009, the Government submitted the material to the Court.[1]  On August 17, 2009, the Defendant filed his Motion for Production, requesting that the Government's submission to the Court be served upon defense counsel.  *See* Mot. for Produc. 1.

## II.     PRELIMINARY ISSUES

### A.     Press's standing to intervene

The Press must have standing in order to intervene for the purposes of opposing the Government's Motion.  *See, e.g.*, *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994) ("In sum, [intervenors] have no personal interest affording them standing to intervene.  As a matter of law, therefore, the intervention motion is denied.").  The Government does not oppose the Press's intervention.  *See* Gov't Resp. 1 n.1.  Because standing is jurisdictional, however, the Court considers it at the outset.  *See, e.g.*, *United States v. Gurney*, 558 F.2d 1202, 1202 (5th Cir. 1977).

The Government's Proposed Protective Order may arguably affect the Press's rights to gather the news and access judicial records; thus, the Press "does have standing to challenge [that] protective order for abuse or impropriety."  *See Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 898 (7th Cir. 1994) (citations omitted); *see also Davis v. E. Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996) (granting standing to challenge "orders imped[ing] the news agencies' abilities to gather the news").  Accordingly, the Press's Motion is granted as to its request to intervene in this case.  Of course, whether "[the Press's] constitutional claims might ultimately be found to be without merit is irrelevant to the standing inquiry.  Such a

---

[1] Anticipating a more voluminous set of such materials, the Court's Order indicated that the Court would set the matter for a hearing.  *Id*. at 2.  As explained below, the Court believes that a hearing is not necessary at this time.

determination goes to the substantive merits of the claims, not to [the Press's] standing to assert such claims." *Herald Co. v. McNeal*, 511 F. Supp. 269, 272 (E.D. Mo. 1981).

**B.    In Camera** Showing

Federal Rule of Criminal Procedure 16(d)(1) grants courts discretion to permit a party seeking a protective order to make its showing ex parte, and requires that such showing be placed under seal if a protective order is ultimately issued. FED. R. CRIM. P. 16(d)(1) ("The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal."). In its Motion for Production, Defendant requests access to the Government's August 14, 2008, submission. Mot. for Produc. 1. Additionally, the Press requests that the Government provide its attorneys with copies of all documents which may be covered by the Government's Proposed Protective Order. Press's Reply 5.

The purpose of the Government's Motion is, among other things, to prohibit Defendant from disseminating discovery materials which Defendant will receive in the normal course of discovery. *See* Mot. 2-3. If Defendant were to receive those materials before a protective order is in effect, the very interests the Government seeks to protect could be harmed before their validity could be determined. *See* FED. R. CRIM. P. 16 advisory committee's note (stating that while ex parte proceedings "are disfavored and not to be encouraged," they are appropriate "if any adversary proceeding would defeat the purpose of the protective or modifying order"); *see also United States v. Bocra*, 623 F.2d 281, 285 (3d Cir. 1980) ("The submission of discovery materials to the court for an in camera inspection . . . is commonly used when the Government's need for preserving confidentiality over the materials must be balanced with the defendant's constitutional right to evidence material to his defense.") (citing, inter alia, *United States v. Brown*, 539 F.2d 467, 470 (5th Cir. 1976) ("*Brown I*")). More importantly, because Defendant is

free to seek a modification of either the terms of the protective order or the items subject to the protective order – all of which Defendant will receive through discovery – the Court does not believe that "its use of the ex parte proceedings [will] cause[] him any prejudice." *United States v. Napue*, 834 F.2d 1311, 1323 (7th Cir. 1987) (upholding ex parte proceeding when "the court went to considerable lengths to compensate for any refusal of information to [the defendant] prior to trial and to accommodate [the defendant's] need for time to prepare his defense"). Because an ex parte showing protects the Government's interests while preserving Defendant's rights to re-assert his interests at a later point, Defendant's Motion for Production is denied.

For the same reasons, the Press need not have an opportunity to access the materials potentially subject to a protective order before a court may enter a protective order. *See Application of Storer Commc'ns, Inc.*, 828 F.2d 330, 335 (6th Cir. 1997) ("After giving defense counsel and media representatives an opportunity to be heard, the court can then proceed to consider the submitted materials in camera if that is required."). While the Press "must be given an opportunity to be heard on the question of [its] exclusion," if that opportunity included complete access before the Court determined the scope of the Press's right to access, the Government's interests "would be defeated before [they] could ever be brought to bear." *Globe Newspaper v. Superior Ct*, 457 U.S. 596, 609 n.25 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 401 (1979) (Powell, J., concurring)). In contesting the Government's Motion, the Press has had "the opportunity to object or offer alternatives." *See Phoenix Newspapers, Inc. v. United States Dist. Ct.*, 156 F.3d 940, 949 (9th Cir. 1998). However, "neither the First Amendment nor the Sixth gives press, public, or the defendant the right to look first, before the court has had an opportunity to judge the nature of questioned documents or other matter." *Associated Press v. United States Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983).

**C.  Scope of Protective Order**

The Government's Proposed Protective Order would allow the Government to unilaterally designate discovery materials as sensitive before submitting those materials to the Court. *See* Proposed Protective Order 1. However, a motion for a protective order ordinarily "contemplates a particular and specific demonstration of fact." *See United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (1978) (overturning issuance of protective order "upon a bare request from the government and without further inquiry") (citations omitted). Of course, "[i]n a case with thousands of documents," a document-by-document approach to protective orders "might impose an excessive burden on the district judge. . . ." *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999). Nevertheless, umbrella protective orders are disfavored. *See, e.g.*, *Holland v. Summit Autonomous, Inc.*, No. 00-2314, 2001 U.S. Dist, LEXIS 12659, at *5 (E.D. La. Aug. 13, 2001) (quoting *Bater AG v. Barr Labs.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995)). Based on the Government's in camera submission, the Court does not find that the potential protected material is excessive, and an umbrella protective order is therefore inappropriate at this stage. *See, e.g.*, *Holland v. Summit Autonomous, Inc.*, No. 00-2314, 2001 U.S. Dist, LEXIS 12659, at *5 (E.D. La. Aug. 13, 2001) ("Umbrella protective orders are disfavored") (quoting *Bater AG v. Barr Labs.*, 162 F.R.D. 456, 465 (S.D.N.Y. 1995)). Thus, the Court's analysis will be limited to materials submitted by the Government and which the Government will disclose to Defendant.[2] The Government is free to seek to amend any protective order the Court enters so as to cover additional materials.

## III. ANALYSIS

The Court first considers whether the Government has established good cause justifying

---

[2] The Government submitted certain materials which it indicated are not presently discoverable. The Court will defer its consideration of those materials until they are discoverable.

the entry of a protective order in light of the discovery materials it has submitted and the relevant interests it seeks to protect. After determining whether a protective order should be issued, the Court considers the appropriate terms of that protective order in light of Defendant's and the Press's objections.

**A. Standard**

Federal Rule of Criminal Procedure 16(d)(1) provides that, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." FED. R. CRIM. P. 16(d)(1).[3] As the party seeking a protective order, the Government bears the burden of showing good cause. *See United States v. Fallen*, 498 F.2d 172, 175 (8th Cir. 1974); *United States v. Isa*, 413 F.2d 244, 248 (7th Cir. 1969). The showing need not be limited to the Government's own interests: "[a] protective order may be issued upon a showing . . . by a party advocating the privacy interests of nonparties." 23 AM. JUR. 2D. *Depositions and Discovery* § 252 (2009) (citing *United States v. Liebert*, 519 F.2d 542 (3d Cir. 1975)). Additionally, the entry of a protective order under Rule 16(d)(1) is within the trial court's discretion. *See, e.g.*, *United*

---

[3] Protective orders in civil cases are governed by Federal Rule of Civil Procedure 26(c)(1), which sets forth the same standard – "good cause" – and allows courts to enter protective orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." FED. R. CIV. P. 26(c)(1). The Court notes that the interests sought to be protected in civil and criminal cases often overlap. *Compare United States v. Hsu*, 155 F.3d 189, 193 (3d. Cir 1998) (in criminal case, "the government filed a motion . . . for a protective order to prevent the disclosure of the Bristol-Myers trade secrets"), *with Maxwell v. First Nat'l Bank of Md.*, 143 F.R.D. 590, 598 (D. Md. 1991) (in civil case, "the supporting in camera documents establish that the protective order is needed to protect national security"). Further, courts have extended the First Amendment implications of restrictions on civil discovery to criminal discovery, as further discussed in the section of this Order discussing the Press's interests.

Additionally, the materials the Government seeks to subject to a Protective Order are those it believes are sensitive but not classified. Protective orders for classified information are governed by the Classified Information Procedures Act ("CIPA"), Pub. L. No. 96-456, 94 Stat. 2025 (1980), *codified at* 19 U.S.C. app. 3. "CIPA's provisions on discovery. . . complement those of Rule 16(d) . . . . Like Rule 16(d) . . . CIPA leaves [protective orders] to the informed discretion of the district court." *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 121-22 (2d Cir. 2008).

*States v. Mejia*, 448 F.3d 436, 456 (D.C. Cir. 2006); *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir. 1991) (because language in Rule 16 is "not mandatory, but permissive," protective orders are reviewed for abuse of discretion).

"[T]he trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185 (1969) (citing prior version of FED. R. CRIM. P. 16(d)); *see also Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003) ("The power of courts . . . to delimit how parties may use information obtained through the court's power of compulsion is of long standing and well-accepted."). In doing so, the court should seek to ensure that disclosure of discovery materials to a defendant "involve[s] a minimum hazard to others." *Alderman*, 394 U.S. at 185 (1969). Additionally, a court must consider whether the imposition of the protective order would prejudice the defendant. *See, e.g.*, *United States v. Davis*, 809 F.2d 1194, 1210 (6th Cir. 1987) (requiring the defendant to "demonstrate substantial prejudice" from "imposition of a Rule 16 protective order"). Finally, "[t]he good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-91 (3d Cir. 1994)).

B. **Government's Interests**

1. **Good cause for a protective order**

The Government's ex parte submission to the Court consists of two categories of

discovery materials mentioned in the Government's Motion: 1) an unpublished recording and unpublished transcript of journalist/author Ann Louise Bardach's interview with Defendant;[4] and 2) medical records of non-parties.

### a. Ms. Bardach's interview

The Government argues that Ms. Bardach's interview and transcript should be subject to a protective order because they implicate her economic interest in controlling their dissemination. *See* Gov't's Reply 11.[5]  Defendant argues that the Government has failed to show good cause for a protective order as to Ms. Bardach's materials because the journalists' privilege is inapplicable to those materials or is outweighed by Defendant's constitutional rights.  *See* Def.'s Resp. 4-5; *see generally* C. THOMAS DIENES ET AL., NEWSGATHERING AND THE LAW §§ 16.01 – 16.08 (3d. ed. 2005) (discussing development and scope of journalists' privilege).  However, whether Ms. Bardach's interview transcript and notes are privileged is a separate issue from whether her economic interests in controlling the dissemination of those materials warrant a protective order. *See, e.g.*, *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 999 (10th Cir. 1965) (while "[n]o absolute privilege protects the information sought here from disclosure . . . [t]he documents were made available . . . only for the purposes of the case"), *overruled on other grounds as stated in FTC v. Alaska Land Leasing, Inc.*, 778 F.2d 577, 578 (10th Cir. 1985); *United States v. Felt*, 491 F. Supp. 179, 184 (D.D.C. 1979) (A protective order "need not be triggered by a formal claim of

---

[4] The Government's Motion alluded to Ms. Bardach's materials quite vaguely, categorizing them as "reporters' tapes and transcripts, or related materials, that have not themselves been published."  Gov't's Mot. 3 n.1.  The Court sees no possible reason to withhold Ms. Bardach's name from this Order.  Indeed, Defendant pointed out in his Response that "the only 'reporter' the Government alluded to during discussions with defense counsel is [Ms. Bardach]" and stated his opposition to the Government's Motion with that understanding in mind. Def.'s Resp. 4-5.

[5] In its ex parte submission, the Government stated that it had spoken with Ms. Bardach's counsel to confirm that she shares the interests the Government is asserting on her behalf.

privilege . . . it is also justified when the sensitive nature of the disputed material is apparent.") (citations omitted).

It is well settled that preventing harm to a person's economic interests is an appropriate purpose of a protective order. *See, e.g.*, *E. I. du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 102-03 (1917) (where "it is or should become necessary to reveal [trade] secrets to others it will rest in the judge's discretion to determine whether, to whom, and under what precautions, the revelation should be made"). In this case, Ms. Bardach has a financial interest in disseminating her materials, previously in her exclusive possession, in any manner she sees fit. If Ms. Bardach intends to publish her interview materials, she is entitled "the leisure to develop [her] ideas free from fear of expropriation . . . ." *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 555 (1985) (citation omitted).[6] If Ms. Bardach intends to sell the materials, she is entitled to the proceeds of such sale. However she chooses to disseminate her interview tapes and transcripts, if the Government did not prosecute Defendant, that choice would have remained Ms. Bardach's. Ms. Bardach should not stand to lose that control over her materials simply because the Government is required to produce those materials to Defendant in discovery. Accordingly, the Government has shown good cause for a protective order as to Ms. Bardach's tapes and transcript.

Defendant additionally notes that a protective order is not needed because Ms. Bardach "has already published many articles and books regarding the Defendant . . . ." Def.'s Resp. 4. The Government's Motion does not seek a protective order as to those articles and books, however. The Government has established good cause as to the actual interview and transcripts to be produced to Defendant, and is entitled to a protective order covering those materials and

---

[6] The Court cites *Harper & Row*, a copyright case, not for the proposition that Ms. Bardach would succeed in an infringement claim if her materials were disseminated but to explain that Ms. Bardach's economic interests would be harmed by the dissemination.

any information taken from those materials. Any protective order would not cover information independently derived from other sources.

### b.    Medical records

The use of protective orders to prevent disclosure of private medical information is also clearly established. *See Bittaker*, 331 F.3d at 716 ("Courts could not function effectively in cases involving sensitive information – trade secrets, *medical files* and minors, among many others – if they lacked the power to limit the use parties could make of sensitive information obtained from the opposing party by invoking the court's authority.") (emphasis added); *see also United States v. W.R. Grace*, 401 F. Supp. 2d 1093, 1096 (D. Mont. 2005) ("The only issue with regard to these [medical] records is whether the victim witnesses' privacy rights require the Court to place restrictions on the production in the form of redaction of sensitive materials, issuance of a protective order, or both."). Moreover, Defendant concedes that some level of protection for private medical records is appropriate. *See* Def.'s Resp. 6-7. The Court holds that the Government has established good cause for a protective order as to non-parties' medical records.

### 2.    Pretrial publicity

Apart from the materials specifically covered by a protective order, the Court shares the Government's general concern with inappropriate disclosures to the media:

> [T]rial courts have an affirmative constitutional duty to minimize
> the effects of prejudicial pretrial publicity. . . . The beneficiaries of
> this duty include not only the defendant in a given trial. . . . The
> vigilance of trial courts against the prejudicial effects of pretrial
> publicity also protects the interest of the public and the state in the
> fair administration of criminal justice.

*United States v. Brown*, 218 F.3d 415, 423-24 (5th Cir. 2000) (*Brown II*) (citations and quotations omitted).

While the Court does not seek to enter a broad gag order, the Court reminds all attorneys involved in this case that they remain bound by the Court's Local Rule AT-6 concerning pretrial

publicity.  In pertinent part, that Rule provides that "[a] lawyer must not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that the statement has a substantial likelihood of materially prejudicing an adjudicative proceeding."  W.D. TEX. LOC. R. AT-6(a).  Additionally, Local Rule AT-6(g) provides that, "[i]n a widely publicized or sensational case, the court on . . . its own motion, may issue a special order governing . . . extrajudicial statements by participants in the trial, including . . . parties[,] which have a substantial likelihood of divulging prejudicial matter not of public record in the case."  W.D. TEX. LOC. R. AT-6(g).  Because of the unique nature of this case, the Court believes it is necessary to extend Rule AT-6(a) to Defendant.

In *Brown II*, the Fifth Circuit held that a restriction on pretrial publicity directed at parties as well as their attorneys is appropriate where "the trial participants, like attorneys, [were] privy to a wealth of information that, if disclosed to the public, could readily jeopardize the fair trial rights of the parties."  *Brown II*, 218 F.3d at 427.  Because "the problem the district court sought to avoid depended in no way on the identity of the speaker as either a lawyer or a party," the Fifth Circuit did not "distinguish between the two groups for the purpose of evaluating a gag order directed at them both."[7]  *Id.*  Similarly, in this case, there is no valid reason for distinguishing

---

[7] The gag order in *Brown II* prohibited the parties from making any statements that "could interfere with a fair trial or prejudice" a party.  *Id.* at 418.  The Fifth Circuit required the district court to find that the attorneys and the parties subject to the gag order were substantially likely to make prejudicial comments and that "the order [was] narrowly tailored and [was] the least restrictive means available."  *See id.* at 427-28.  This standard is incorporated in Rule AT-6(a), which "applies only to speech that is substantially likely to have a materially prejudicial effect; it is neutral as to point of view, applying equally to all attorneys participating in a pending case; and it merely postpones the attorneys' comments until after the trial."  *Gentile v. State Bar of Nevada*, 510 U.S. 1030, 1076 (1991).  The Supreme Court upheld a similarly-phrased rule directed at attorney speech in *Gentile*, and stated that "nothing inherent in [the rule's] formulation fails First Amendment review . . . ."  *Id.* at 1038.  For that reason, Rule AT-6(a) is applicable to attorneys without a threshold finding that an attorney is substantially likely to make comments which are themselves substantially likely to be prejudicial.

between Defendant and his attorneys, as "the court's overriding interest [] in preserving a fair trial and the potential prejudice caused by the extrajudicial commentary does not significantly depend on the status of the speaker as a lawyer or a party." *Brown II*, 218 F.3d at 428. Defendant is no stranger to the media. *See, e.g.*, Albor Ruiz, *Ex-Spy Bust Puts Bush on the Spot*, N.Y. DAILY NEWS, May 19, 2005, at 4 ("[Defendant] himself held an impromptu press conference"). Indeed, Defendant's Superseding Indictment is based in part on comments about Defendant in the New York Times. *See* Superseding Indictment 4-7. Accordingly, because the Court's interest in preventing statements that have a substantial likelihood of materially prejudicing Defendant's trial is as applicable to Defendant as to the attorneys involved in this case, the Court hereby puts Defendant on notice that – separately and apart from any protective order – Defendant may not make extrajudicial statements as proscribed by Local Rule AT-6(a). *See* W.D. TEX. LOC. R. AT-6(g).

## C. Defendant's Interests

Defendant argues that the Government's Proposed Protective order would unduly restrict his ability to prepare a full defense by requiring this Court's pre-approval of any disclosure of protected materials. Def.'s Resp. at 1-2. The Government argues that such a procedure would preserve Defendant's "legitimate ability to prepare for trial" while limiting public disclosure of the protected materials. Gov't Reply 3-4.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The Court agrees with Defendant that requiring the Court's approval before Defendant may disclose protected materials in preparation for his trial would needlessly impair that opportunity. Such a procedure would be time-consuming, expensive, and would essentially require Defendant to keep the Court and the Government on perpetual notice of his trial preparation-related activities. Furthermore, such a

procedure is not necessary to accommodate the Government's interests.

Accordingly, the Government's Motion is denied insofar as it requires Defendant to seek the Court's approval before disclosing protected materials in preparation for his trial. Instead, the Court will require Defendant to disclose protected materials only as necessary for trial preparation. Before Defendant discloses any protected materials to any person outside the defense team, Defendant must obtain a signed memorandum of understanding stating that the person has read the protective order and agrees to be bound by its terms. Additionally, Defendant must submit any such memorandum of understanding to the Court. If necessary to avoid disclosing trial strategy, Defendant may make such submission ex parte. This procedure addresses the Government's interests in preventing unwarranted disclosure of protected materials while only minimally affecting Defendant's ability to prepare for trial. *See United States v. Lindh*, 198 F. Supp. 2d 739, 744 (E.D. Va. 2002) ("the procedures adopted herein, including the requirement of ex parte submission [of memoranda of understanding] by the defendant, are designed to minimize any burdens on defendant's Sixth Amendment right to prepare and present a full defense at trial").

### D. **Press's Interests**

#### 1. **Sealed Documents**

The Press argues that the Government's Proposed Protective Order would restrict its First Amendment and common-law right of access to judicial records. Press's Mot. 7-10. As outlined in the Government's Proposed Protective Order, the Government's request that all filings implicating protected materials be sealed would sweep too broadly and deprive the Press of its right of access.

"[M]embers of the public have a right of access to criminal proceedings secured by the

First Amendment." *Tennessee v. Lane*, 541 U.S. 509, 523 (2004) (citing *Press-Enterprise Co. v. Superior Court of Cal., County of Riverside*, 478 U.S. 1, 8-15 (1986) ("*Press-Enterprise II*"); *see also Richmond Newspapers v. Virginia*, 448 U.S. 555, 574 (1980) ("From [an] unbroken, uncontradicted history, supported by reasons as valid today as in centuries past, we are bound to conclude that a presumption of openness inheres in the very nature of a criminal trial under our system of justice."). At the same time, "it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8-9. Thus, in determining whether a presumptive First Amendment right of access applies to a given stage of a criminal proceeding, the Supreme Court has "considered whether the place and process [has] traditionally been open to the press and the public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 8 (holding that First Amendment right of access applies to preliminary hearings as conducted in California).

Under the *Press-Enterprise II* test, circuit courts have extended a presumptive First Amendment-based right of access to various pretrial proceedings. *See, e.g.*, *United States v. Chagra*, 701 F.2d 354, 362 (5th Cir. 1983) (pretrial motion to reduce bail); *United States v. Criden*, 675 F.2d 550, 556 (3d. Cir 1982) (suppression hearing); *United States v. Danovaro*, 877 F.2d 583, 589 (7th Cir. 1989) (plea hearing). If the presumptive right of access attaches to a proceeding, the right "may be overcome only by an overriding interest based on finding that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 9 (quoting *Press-Enterprise Co. v. Superior Court of Cal., County of Riverside*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*")). Additionally, the court must articulate its reasons for closure through "findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* at 9-10 (quoting *Press-*

*Enterprise I*, 464 U.S. at 510).

While the Fifth Circuit has not directly addressed this question, other circuits have held that the *Press-Enterprise II* test for determining a qualified First Amendment right of access applies to documents filed in connection with pretrial proceedings. *See Associated Press*, 705 F.2d at 1145 ("There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them."); *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 502 (1st Cir. 1989) (there is a "First Amendment right of access to records submitted in connection with criminal proceedings"); *In re New York Times Co.*, 828 F.2d 110, 115 (2d Cir. 1987) ("a qualified First Amendment right of access extends to such documents"); *United States v. Smith*, 776 F.2d 1104, 1112 (3d Cir. 1985) ("no reason occurs to us why [the *Press-Enterprise II*] analysis does not apply as well to judicial documents"); *In re Washinton Post. Co.*, 807 F.2d 383, 389 (4th Cir. 1986) ("the First Amendment right of access applies to documents filed in connection with [hearings]"); *Applications of Nat'l Broadcasting Co.*, 828 F.2d 340, 343 (6th Cir. 1987) (applying *Press-Enterpise II* test to hold that "there is a qualified right of access to documents and records that pertain to [the proceeding in question]"); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) ("this presumption is of constitutional magnitude"); *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("the first amendment right of access does extend to the documents filed in support of search warrant applications"); *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997) ("The First Amendment guarantees the press and the public access to aspects of court proceedings, including documents"); *see also United States v. McVeigh*, 119 F.3d 806, 813 (10th Cir. 1997) ("Assuming [without deciding] that the *Press Enterprise II* right of access extends to at least some types of judicial documents . . . .").

In addition to a First Amendment right of access, the Press also has a "common-law right of access to judicial records . . . ." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 596 (1978). "[T]he common law [right of access] merely establishes a presumption of public access to judicial records." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988) (footnote omitted)). "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the interests favoring disclosure." *Id.* at 848 (citations omitted).

The Government's Proposed Protective Order, by requiring that all pre-trial filings involving any protected materials be filed under seal without a corresponding motion, would effectively short-circuit any analysis of whether a First Amendment or common-law right of access applies to any particular filing. The Court simply cannot determine – let alone "articulate[] along with findings specific enough that a reviewing court can determine whether the closure order was properly entered," *Press Enterprise I*, 464 U.S. at 510 – whether all filings involving protected materials should be sealed without any knowledge as to the substance or context of any particular filing. Additionally, if a First Amendment right of access attaches to sealed documents, then a protective order pre-approving the sealing of all filings implicating protected materials would not be "essential to preserve higher values and [] narrowly tailored to serve [those values]." *Press Enterprise I*, 464 U.S. at 510.

Finally, the Proposed Protective Order would prevent the Press from knowing why any particular filing is made under seal. "The docketing of motions to close a proceeding or to seal certain documents provides notice to the public, as well as to the press, that such a motion has been made and, assuming that such motions are docketed sufficiently in advance of a hearing on or the disposition of the motion, affords the public and the press an opportunity to present

objections to the motion." *In re Search Warrant*, 855 F.2d 569, 575 (8th Cir. 1988). If the Court were to allow any filing that involves protected materials to be automatically docketed under seal, the Press and the public would be denied access to those documents and denied access to any explanation as to why they are denied access to those documents. Such a procedure is unacceptable.

Instead, the Court will require that any filings relating to the protected materials be filed under seal but with a motion explaining why the filing party either 1) believes that the filing should remain under seal, or 2) believes that the filing should be unsealed. Unless an interested party requests that the filing remain under seal and states the reasons for their request, the papers will be unsealed within fourteen days of filing.[8] Such a procedure allows the Government, Defendant, and the Press an opportunity to present their arguments about whether a common-law and/or First Amendment right of access applies to each sealed filing in the particular context of that filing. Further, because the arguments presented would be specific to the judicial records at issue, the Court would be able to make "findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press Enterprise I*, 464 U.S. at 510.

## 2. **Dissemination of protected materials**

The Press also argues that a protective order prohibiting Defendant from disseminating protected materials would restrict the Press's right to gather the news and receive protected speech. *See* Press's Mot. 4-7. The Court disagrees. Because the Government's Motion only seeks to restrict the dissemination of discovery materials and because the Government has shown good cause as to those materials, any restriction on Defendant's dissemination of those materials does not violate the First Amendment.

---

[8] For the reasons explained in the Section of this Order discussing access to pre-trial discovery, and as required by Rule 16(d), the documents filed in connection with the Government's Motion will be sealed.

The Press's First Amendment "right to gather the news is not, of course, absolute . . . [the right does not] guarantee journalists access to sources of information not available to the public." *In re Express-News Corp.*, 659 F.2d 807, 809 (5th Cir. 1982). In *Seattle Times v. Rhinehart*, 467 U.S. 20 (1984), the Supreme Court held that "where . . . a protective order is entered on showing of good cause[,] . . . is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." *Rhinehart*, 467 U.S. at 37 (footnote omitted). The circuit courts have since extended *Rhinehart*'s reasoning to pretrial criminal discovery. "Discovery, *whether civil or criminal*, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1996) (citation omitted) (emphasis added); *see also United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (because Rule 16 materials must be furnished by the Government to the defendant, no presumption in favor of public access applies to those materials).[9] Thus, in a criminal case, the Fifth Circuit stated that "[t]he results of pretrial discovery may be restricted from the public."[10] *In re Gannett News Svc.*, *Inc.*, 772 F.2d 113, 116 (5th Cir. 1985) (holding that "temporary denial of access [to evidence not yet ruled admissible] constitutes no form of prior restraint"). Thus, if the party seeking a protective order shows good cause, the Court has the discretion to restrict the dissemination of discovery materials and any such restriction does

---

[9] The Court notes that the Press may not obtain access to these materials simply because they were submitted to the Court for the purpose of determining whether they are subject to the protective order. *Anderson*, 799 F.2d at 1439 ("Simply because the Government filed the notice in compliance with a court order does not make the notice information something other than voluntary discovery."); *see also Gannett*, 772 F.2d at 116 ("Had it not been for the motions there would be no materials on file for [the press] to seek access to.").

[10] The Press enjoys a right of access equivalent to that of the public. *See Nixon*, 435 U.S. at 610 (1978); *see generally Saxbe v. Washington Post. Co.*, 417 U.S. 843, 863-64 (1974) (Powell, J., dissenting) ("No individual can obtain for himself the information needed for the intelligent discharge of his political responsibilities . . . . In seeking out the news the press therefore acts as an agent of the public at large.").

not implicate the litigants' or the Press's First Amendment rights.  *See also Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985) ("If the party from whom discovery is sought shows 'good cause,' the presumption of free use dissipates, and the district court can exercise its sound discretion to restrict . . . what use can be made of [discovery materials] once obtained.") (citations omitted); *United States v. Microsoft Corp.*, 165 F.3d 952, 960 (D.C. Cir. 1999) (applying civil "good cause" standard to press access to discovery).

Finally, the Court again notes that the Government's Motion is limited to disclosure of protected materials furnished to Defendant through pretrial discovery and information taken from those materials.  "[A] protective order prevents a party from disseminating only that information obtained through the use of the discovery process.  Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the Court's processes."  *Rhinehart*, 467 U.S. at 33-34.  The Government's Motion does not implicate such information.

## IV.     CONCLUSION

For the reasons set forth above, the "Government's Motion for a Protective Order" **(Doc. No. 145)** is GRANTED IN PART, "Miami Herald Publishing Company and the Associates Press's Motion to Intervene for the Limited Purpose of Opposing the Government's Motion for a Protective Order" **(Doc. No. 153)** is GRANTED IN PART, and "Defendant's Motion for Production of Government's Log Asserting Nature of Sensitive Materials" **(Doc. No. 166)** is **DENIED**.

Additionally, Defendant Luis Posada Carriles is hereby **ORDERED** to refrain from making any extrajudicial statements that a reasonable person would expect to be disseminated by means of public communication if Defendant knows or reasonably should know that the statement has a substantial likelihood of materially prejudicing his trial.  *See* W.D. TEX. LOC. R. AT-6(a).  All attorneys are reminded that they remain subject to Local Rule AT-6.

A Protective Order will issue separately.

**SO ORDERED**.

**SIGNED** on this 25th day of August, 2009.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE