**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-07-CR-87-KC** |
| | § | |
| **LUIS POSADA CARRILES,** | § | |
| | § | |
| **Defendant**. | § | |

## ORDER

On this day, the Court considered Defendant Luis Posada Carriles' "Motion Requesting Issuance of Subpoenas Duces Tecum for Relevant Records from Ann Louise Bardach, Larry Rohter and *The New York Times* Regarding Interview of Defendant" ("Motion"). For the reasons set forth herein, the Motion is **DENIED**.

## I. BACKGROUND

On April 8, 2009, the government filed a Superseding Indictment against Defendant Luis Posada Carriles ("Posada") charging him with two counts of Perjury under 18 U.S.C. § 1621(1), one count of Obstruction of Proceedings Before Department and Agencies under 18 U.S.C. § 1505, one count of Naturalization Fraud under 18 U.S.C. § 1425(a), and seven counts of False Statement in Naturalization Proceeding under 18 U.S.C. § 1015(a). *See generally* Superseding Indictment (Doc. No. 133). In Count One of the Superseding Indictment, the government alleges that Posada perjured himself when he appeared as a witness under oath before an Immigration Judge in 2006. *Id.* at 3-5. As part of that Count, the Superseding Indictment makes reference to an interview ("Interview") between journalist Ann Louise Bardach and Posada. *Id.* at 4-5.

1

During the immigration hearing, the government alleges Posada made the following false declarations in response to questions:

> Question in English:    Well, were you involved in soliciting other individuals to carry out the bombings in, the bombings in Cuba?
>
> English translation of Posada's response in Cuban Spanish:    No.
>
> Interpreter's contemporaneous translation of Posada's response:    No.
>
> Question in English:    Now, you . . . do you . . . are you stating that the comments made by [Ann Louise Bardach] in the New York Times article, that you were involved in soliciting others, other individuals to engage in these bombings is not true?
>
> English translation of Posada's response in Cuban Spanish:    I am saying that is not true.
>
> Interpreter's contemporaneous translation of Posada's response:    I am saying that is not true.

*Id.* at 4-5.

In Count Three of the Superseding Indictment, the government alleges that Posada provided false or misleading information or withheld information at the immigration hearing, incorporating the responses set forth in Count One of the Superseding Indictment so as to constitute Obstruction of Proceedings Before Department and Agencies. *Id.* at 7-8.

## II.    DISCUSSION

### A.    Standard

Federal Rule of Criminal Procedure 17(c) governs motions for subpoenas duces tecum and provides simply that:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them."

FED. R. CRIM. P. 17(c).

The party seeking a Rule 17(c) subpoena must show that the materials sought are relevant, that they are admissible, and that they are requested with adequate specificity. *United States v. Arditti,* 955 F.2d 331, 345 (5th Cir. 1992) (citing *United States v. Nixon*, 418 U.S. 683, 697-702 (1974)). A Rule 17(c) subpoena is not a discovery device nor does it provide a means of discovery beyond the discovery provided for in Rule 16. *Nixon*, 418 U.S. at 700; *Arditti*, 955 F.2d at 345 (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). "The specificity and relevance elements require more than the title of a document and conjecture as to its contents." *Arditti*, 955 F.2d at 345. If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought, but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused. *United States v. Noriega*, 764 F.Supp. 1480, 1493 (S.D. Fla. 1991). The subpoena must be sought in good faith and not as a "fishing expedition." *Arditti*, 955 F.2d at 347. Requesting entire files instead of specific documents is indicative of a fishing expedition. *United States v. Reed*, 726 F.2d 570, 577 (9th Cir.), *cert. denied*, 469 U.S. 871 (1984).

### B.     Subpoena Requests

In his Motion, Posada enumerates several categories of materials that he seeks via subpoena from journalists Ann Louise Bardach and Larry Rohter as well as from *The New York Times*. Def.'s Mot 1-2. These categories include:

> (A) All documents, records, correspondence, draft articles, e-mails and notes, in any format, whether electronic or otherwise, prepared or received by any employee or agent of *The New York Times* (including but not limited to Ann Louise Bardach and Larry Rohter) prior to April 8, 2009, that refer to the interview of Luis Posada Carriles, whether by name or otherwise, by Ann Louise Bardach in 1998.

> (B) All original recordings of any interview of Luis Posada Carriles regarding any bombing in Cuba used by any employee or agent of *The New York Times* (including but not limited to Ann Louise Bardach and Larry Rohter) prior to publication of the three part article, *A Bomber's Tale* in 1998.

(C) All recording equipment used for any interview of Luis Posada Carriles regarding any bombing in Cuba used by any employee or agent of *The New York Times* (including but not limited to Ann Louise Bardach and Larry Rohter) prior to publication of the three part article, *A Bomber's Tale* in 1998.

(D) All documents, records, correspondence, e-mails and notes, in any format, whether electronic or otherwise, prepared or received by any employee or agent of *The New York Times* (including but not limited to Ann Louise Bardach and Larry Rohter) prior to publication of the three part article, *A Bomber's Tale* in 1998, that refer to any interview of any official, law enforcement officer or agent of Cuba, (including but not limited to Fidel Castro and any Cuban government officials), whether by name or otherwise, regarding Luis Posada Carriles, any bombings in Cuba or of any Cuban airliner.

(E) All computer hard-drives containing any of the documents, records, correspondence, emails and notes requested above.

*Id.*

Posada argues generally that the records he seeks "are relevant and material to impeach the authenticity, veracity and reliability of the materials the Government intends to introduce at trial from [] foreign governments as well as creating context to the interview of the Defendant by the reporter . . . ." Mot. 4. He further claims that materials sought are "probative of the accuracy and context in which the interview statements [were] made and the articles were written are necessary and material for the jury to determine Defendant's guilt or innocence . . . ." Def.'s Omnibus Reply 2 (Doc. No. 181). Posada continues that the materials sought "served as the foundation for the charges in the indictment." *Id.* The Court will address each of these requests in turn.

### 1. Materials pertaining to 1998 Interview, materials referring to Cuban officials regarding Posada prior to the 1998 Interview, and computer hard drives containing such materials

In section (A) Posada requests subpoenas from employees and agents of *The New York Times* for materials pertaining to the Interview with Bardach. Def.'s Mot. 1. In section (D) he seeks materials prepared or received by employees or agents of *The New York Times* referring to

Cuban officials regarding Posada or any bombings in Cuba. *Id.* at 2. In section (E) he seeks computer hard drives containing the above materials. *Id.*

### a. Specificity

In *United States v. Arditti*, the Fifth Circuit affirmed the district court's quashing of the defendant's Rule 17(c) subpoena. *Arditti*, 955 F.2d at 346. The Fifth Circuit did so because the defendant failed to demonstrate with sufficient specificity the evidentiary nature of the requested materials. *Id.* Although the defendant explained why he wanted to review the materials, he failed to set forth in sufficient specificity the requested materials' contents to demonstrate the evidentiary nature of the request. *Id.* The Fifth Circuit found that the defendant was seeking to gain knowledge unavailable to him under Federal Rule of Criminal Procedure 16, and attempting "to use the subpoena duces tecum as a discovery device, which it is not." *Id.* (citation omitted).

In this case, Posada has explained why he wants to review these materials – to provide context, check for accuracy and reliability, and ferret out bias and improper motive. However, as with the defendant in *Arditti*, Posada has failed to set forth what the materials are, what they contain, or to even confirm their existence. *See id.* As a result, the Court is forced to speculate as to their contents, their relevance, and their admissibility due to the generality of the requests. This is inappropriate for Rule 17(c) considerations. *See Arditti*, 955 F.2d at 346 (finding that a court should not have to speculate as to the contents and relevance of the materials sought).

Furthermore, as to section (A) of his requests, Posada seeks documents not only from Bardach and Rohter, but also documents prepared or received over an eleven year period from 1998 to 2009 by any employee or agent of *The New York Times* related to the Interview. What Posada has set forth is a category of materials, without a description of or reference to actual items known to exist. *Cf. United States v. Skilling*, Crim. No. H-04-025, 2006 WL 1006622, at *2 (S.D. Tex. Apr. 13, 2006) (holding that requests for materials were sufficiently specific for

Rule 17(c) purposes because they expressly identified specific sets of documents by page number with a page by page description of the contents of the documents sought).  While these materials may exist in theory, Posada has neither demonstrated they that exist in fact nor has he identified them with any degree of particularity.  The specificity requirement serves the function of providing the subpoenaed party with enough knowledge about the documents being requested to lodge objections based on relevancy and admissibility.  *United States v. Ruedlinger*, 172 F.R.D. 453, 456 (D. Kan. 1997) (citing *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 545 (D.C. Cir. 1977)).  This is completely missing here.

Similarly over-broad, Posada's request in section (D) seeks documents and records prepared or received by any agent or employee of *The New York Times* prior to the Interview referring to any Cuban official regarding Posada or any bombings in Cuba or of a Cuban airliner. Def.'s Mot. 2.  The agents or employees of *The New York Times* are unspecified, the time period of the materials sought spans decades from the 1998 Interview back to at least the 1976 bombing of a Cubana airliner.  As with the materials sought in section (A), this is not a request for evidence.  Rather, it resembles an impermissible effort to broaden discovery by seeking an entire class of materials without itemization.  *See Arditti*, 955 F.2d at 346.

In section (E), Posada seeks hard disks containing the section (A) and section (D) materials in electronic form.  This request is similarly unspecific and derivative of the other requests.  For the same reasons the Court finds that Posada's attempt to secure the materials in sections (A) and (D) to be insufficient, the Court finds the attempt to secure items in electronic form to be insufficient as well.

In contrast to the instant case, the United States Supreme Court in *United States v. Nixon*, found that the subpoena issued in that case was supported by a sufficiently specific showing of the materials sought.  *See Nixon*, 418 U.S. at 700.  In *Nixon*, the Special Prosecutor subpoenaed

tape recordings and other writings related to certain identified meetings between the President of the United States and certain individuals in furtherance of an investigation into corruption in the White House. *Id.* The Special Prosecutor was able to identify the time, place, and individuals present at the meetings between the President and these other individuals through the White House daily logs and appointment records. *Id.* at 688. The Court acknowledged that the tape recordings at issue in that case could not be described fully by the Special Prosecutor seeking them; nevertheless, based in part upon the information provided the Court found a "significant likelihood that each of the tapes [contained] conversations relevant to the offenses charged in the indictment" and upheld the denial of the President's motion to quash the subpoenas. *Id.* at 700-02 (citation omitted). The Supreme Court found support in the sworn testimony and statements of the participants in the recorded conversations describing what was said at the time. *Id.* at 700.

In this case, unlike *Nixon*, Posada has provided no information as to the contents or nature of the materials sought. He has not shown a likelihood of the existence of these materials. Nor, unlike in *Nixon,* does it appear that Posada has considered specific items in these requests. This lack of particularity and detail resembles a discovery inquiry; it is well-settled that Rule 17(c) subpoenas may not be used in this manner. See *Bowman Dairy*, 341 U.S. at 220; *Arditti*, 955 F.2d at 346.

Posada contends that "the items requested here did and should still exist, and cannot be obtained from any other source, because the Government has reported that is [sic] does not have the originals of any items requested in the Defendant's Motion." Def.'s Reply 7. If Posada is seeking existing materials of which he is aware, he should enumerate them in a more detailed manner to demonstrate that this is not a fishing expedition, and to enable a consideration of their relevance and admissibility. *See Arditti*, 955 F.2d at 346. For these reasons, Posada's requests in

sections (A), (D), and (E) are not sufficiently specific for Rule 17(c) purposes and his Motion fails as to these sections.

2.    **Original recordings of any interview with Posada regarding the Cuba bombing prior to publication of the article and all recording equipment used for any interview of Posada**

Posada also seeks (B) All original recordings of any interview of Luis Posada Carriles regarding any bombing in Cuba used by any employee or agent of *The New York Times* (including but not limited to Ann Louise Bardach and Larry Rohter) prior to publication of the three part article, *A Bomber's Tale*, in 1998, as well as (C) All recording equipment used for any interview of Luis Posada Carriles regarding any bombing in Cuba used by any employee or agent of *The New York Times* (including but not limited to Ann Louise Bardach and Larry Rohter) prior to publication of the three part article, *A Bomber's Tale* in 1998.  Def.'s Mot. 2.

a.    **Specificity**

Unlike Posada's three other requests, these requests are sufficiently specific to meet the requirements of Rule 17(c).  In section (B), Posada seeks interviews of himself related to bombings in Cuba held prior to the publication of the 1998 article and used by employees of *The New York Times.*  This description contains sufficient details to identify the particular materials sought and demonstrates a request for evidence, and not an improper attempt to expand discovery.  *See Nixon*, 418 U.S. at 700; *Arditti*, 955 F.2d at 346.   Posada specifies a limited set of original recordings, known to exist, of a specific content, involving known participants during a delineated time frame.

In section (C), Posada seeks the recording equipment used in these interviews.  These items are very closely connected to the materials sought in section (B), being the devices used to record the interviews.  Accordingly, the Court holds that the equipment request is sufficiently specific as well.  As with the tapes in *Nixon*, Posada has described a sufficiently specific set of

recordings and, in this case, the related equipment to meet the specificity requirements of Rule 17(c).

### b.    Admissibility

Admissibility requires the party seeking the subpoena to make a preliminary showing that the requested material contains evidence "admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. Conclusory allegations of admissibility are insufficient. *Skilling*, Crim. No. H-04-025, 2006 WL 1006622, at *3 (citation omitted). Although Posada has met the specificity requirement for these materials, his request fails as he has not provided sufficient explanation or argument to demonstrate the admissibility of the recordings and the recording devices

Posada argues that the items requested are admissible "for a variety of purposes, including facts showing the context of interviews and/or statements made and any impeachment." Def.'s Mot. 6. Further, Posada claims that "[t]he items requested specifically identify evidence relevant for a jury to determine the accuracy and reliability of Ms. Bardach's testimony and news articles upon which the Grand Jury based it [sic] the charges in Counts I and III. *Id.* at 7. Posada also claims that the materials are admissible to show "completeness and context" of statements he made during the Interview, "the bias and motives to conduct the interview, and the Cuban government to provide false information to the journalist and the Government herein." Def.'s Reply 5-6

Posada's claims are too general and conclusory to carry his burden. First, the Court notes that Posada's arguments as to relevance and admissibility are co-mingled and difficult to distinguish. Further, he does not apply these arguments to the five sections of materials that he seeks. He offers only general contentions. Whether accuracy and context support admissibility of the materials sought in sections (A), (D), and (E) or the recordings of the interviews and the

recording devices in sections (B) and (C) or all of the items is unclear.  It is also unclear whether

the reasons Posada has given, that is context, completeness, accuracy, and bias, are applicable to

the document and electronic media requests discussed in the previous section of this Order, or to

the interview recordings and recording devices as well.  Assuming Posada intends all of this

reasoning to apply to (B) the interview recordings and (C) the recording devices, Posada's

attempt is insufficient.  Posada does not set forth in any detail why the interview recordings and

the recording devices are admissible.  And his conclusory attempts at doing so are insufficient.

*See Skilling*, Crim. No. H-04-025, 2006 WL 1006622, at *3.  He uses the words "context" and

"accuracy" and "completeness" but he does not discuss their admissibility in relation to these

materials with any basis in law.  Nor does Posada  respond to the government's objections to the

admissibility of the recordings and the recording devices, specifically the hearsay objection to the

recordings and the questioning of the need for the recording devices in advance of trial.  *See*

Gov't's Resp. 9-10.  To the extent that Posada claims he is entitled to these materials for

impeachment purposes, he is typically not entitled to them until trial.  *See Nixon*, 418 U.S. at

701-02.

Posada bears the burden of demonstrating relevance, admissibility, and specificity in

order to obtain evidence through a Rule 17(c) subpoena.  He has failed to do so in this Motion

because he has failed to designate with specificity most of the materials sought, a showing

necessary to demonstrate he is seeking evidence and not discovery materials.  Further, he has

failed to explore the basis for the relevance and admissibility of the evidence he seeks.  Because

Posada has not offered any argument or cited any authority in support of admissibility, his

Motion must be **DENIED.** *See Skilling*,  Crim. No. H-04-025, 2006 WL 1006622, at *6.

### III. CONCLUSION

For the reasons set forth above, Posada's Motion is **DENIED**.

**SO ORDERED**.

**SIGNED** on this 8th day of October 2009.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE