IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-07-CR-087-KC |
| | § | |
| LUIS POSADA CARRILES, | § | |
|    a/k/a "Ramon Medina" | § | |
|    a/k/a "LOBO" | § | |
|    a/k/a "SOLO," | § | |
| | § | |
| Defendant. | § | |

### ORDER REGARDING REDACTION OF
### NATURALIZATION INTERVIEW TAPES AND TRANSCRIPTS

On this day, the Court considered the government's "Submission and Motion Regarding Recordings and Transcripts of Defendant's Naturalization Interview and Removal Proceedings" ("Government's Motion") and "Submission of the United States Regarding Fifth Amendment Issues Raised in Defendant's Motions to Redact" ("Government's Submission"). The Court also considered Defendant's "Under Seal Motion in Limine to Redact Naturalization Interview Tapes and Transcripts" ("Defendant's Motion") and "Under Seal Memorandum of Law Regarding the Admissibility of the Defendant's Assertion of His Fifth Amendment Rights During Immigration Proceedings" ("Defendant's Memorandum").[1] For the reasons set forth herein, the government's Motion is **DENIED**, and Defendant's Motion is **GRANTED** in part and **TAKEN UNDER ADVISEMENT** in part.

---

[1] Because the government has moved to admit the tapes and transcripts of the naturalization interview in their entirety, the Court sua sponte reconsiders its ruling on Defendant's Motion. *See* Order, ECF No. 357.

**I.       BACKGROUND**

Defendant is presently before this Court based on an eleven-count federal grand jury indictment charging him with perjury, obstruction of proceedings before departments and agencies, naturalization fraud, and making a false statement in a naturalization proceeding. Superseding Indictment, ECF No. 133.  These charges stem from statements Defendant made during removal proceedings that were commenced against him on May 18, 2005, as well as statements Defendant made during an interview on April 25 and 26, 2006, with a government official regarding Defendant's application for naturalization.  *Id.* at 2-3.

Defendant moved on January 20, 2010, to redact the tapes and transcripts of the naturalization interview so as to exclude portions of them from evidence based on the Fifth Amendment to the United States Constitution and various provisions of the Federal Rules of Evidence.[2]  Def.'s Mot. 1.  On January 30, 2010, the Court denied Defendant's request, ruling that the request was premature because the government had not yet moved to admit the transcripts in their entirety.  Order, ECF No. 357; *see* Def.'s Mot., ECF No. 320.  On February 3, 2010, in response to a request from the Court, the government notified the Court that it did intend to admit the transcripts of the naturalization interview in their entirety.  Gov't's Mot. 2, ECF No. 378.  The government asserted that both those portions of the transcripts in which Defendant allegedly lied and those portions in which he allegedly responded truthfully were relevant to Defendant's "comprehension and appreciation of the nature of the proceedings," and would "enable the jury to distinguish [Defendant's] lawful conduct from his unlawful conduct." *Id.* at 3.  However, in the naturalization interview Defendant did not substantively answer all the

---

[2] The Court uses "transcripts" to refer to both the tapes and transcripts of the naturalization interview.

questions posed to him; at times he invoked his Fifth Amendment privilege against self-incrimination. *See, e.g.,* Def.'s Mot. Ex. A ("Transcript"), at 09-1189 ("Mr. Posada: 'I take, I take the Fifth Amendment . . .'").[3] Because of this, the Court ordered the parties to submit briefing on the issue of whether the government could comment on or use as evidence Defendant's invocations of the Fifth Amendment.

In response to that Order, the government argues that it may lawfully refer to any or all of the invocations of the Fifth Amendment in the transcripts of the naturalization interview. Gov't's Submission 7, ECF No. 414. Defendant, in turn, argues that admission of any references to such invocations would violate Defendant's right to a fair trial. Def.'s Mem. 5, ECF No. 408.

## II.    DISCUSSION

### A.    Legal Standard

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This right applies not just in criminal proceedings, but also allows a witness to refuse to answer questions in "any other proceeding, civil or criminal, formal or informal, investigatory or adjudicatory, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). This type of protection invoked in an earlier civil proceeding may be characterized as the evidentiary aspect of the Fifth Amendment's protection against self-incrimination, while the "core" of the protection is the guarantee against the introduction of compelled testimony in a criminal trial. *Chavez v. Martinez,* 538 U.S. 760, 777 (2003) (Souter, J., concurring) (plurality opinion).

---

[3] The Court cites to the transcripts of the naturalization interview by the pages' Bates numbers, which are located on the bottom right corner of each page.

The trier of fact in a civil proceeding may draw adverse inferences from a party's refusal to answer questions without infringing on the Fifth Amendment's protections. *United States v. Solano-Godines*, 120 F.3d 957, 962 (9th Cir. 1997). Naturalization interviews are civil actions for the purposes of the privilege against self-incrimination, because they are "civil adjudicatory process[es] that, by regulation, call[] for both an investigation of the applicant and an interview," *United States v. Posada Carriles*, 541 F.3d 344, 357 (5th Cir. 2008), and so fall squarely into the broad sweep of the holding in *Lefkowitz*. *See Lefkowitz*, 414 U.S. at 77. Consequently, "there is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984) (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-54 (1923)).

In a criminal proceeding, by contrast, any comment on or adverse inference drawn from a defendant's assertion of his or her right not to testify violates the Fifth Amendment. *Griffin v. California*, 380 U.S. 609, 614 (1965); *United States v. Johnston*, 127 F.3d 380, 396 (5th Cir. 1997). This is true whether it is a prosecutor, judge, or witness making the comment, *United States v. Rocha*, 916 F.2d 219, 232 (5th Cir. 1990), and whether or not the comment is direct or indirect. *Johnston*, 127 F.3d at 396. A statement constitutes an "impermissible comment[] on a defendant's right not to testify if the prosecutor's manifest intent was to comment on the defendant's silence or if the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *Id.* The right not to testify at trial is analogous to the right to remain silent after arrest, so the tests for comment are the same. *United States v. Mora*, 845 F.2d 233, 235 (10th Cir. 1988).

### B.     Exclusion Based on the Fifth Amendment

The "core" of the guarantee against self-incrimination is the exclusion of compelled, self-incriminating testimony. *Chavez*, 538 U.S. at 777; *see also id.* at 767 (plurality opinion) (distinguishing between impairing the constitutional right by gathering evidence improperly and violating the right by introducing that evidence at a criminal trial). Because comment on or inference drawn from an invocation of the right to remain silent would itself be a form of compulsion to testify, *Griffin*, 380 U.S. at 614, "[p]rosecutors are prohibited from commenting directly or indirectly on a defendant's failure to testify in a criminal case." *Johnston*, 127 F.3d at 396. The government concedes as much at the outset when it notes that "it would be improper to make a general comment about a defendant's decision not to testify against himself." Gov't's Submission 3-4. This concession is enough to dispose of this issue, as the general rule prohibiting comment on a defendant's exercise of the privilege applies in this case.

In applying this general rule there is no reason to distinguish between invocations of the privilege in prior proceedings and those made during a criminal trial, because the form of compulsion would be the same. To make such a distinction would leave little substance in the Supreme Court's holding that the protections of the self-incrimination clause can be invoked in "any other proceeding, civil or criminal, formal or informal, investigatory or adjudicatory, where the answers might incriminate [a defendant] in future criminal proceedings," as an exercise of the privilege in an earlier civil proceeding would provide considerably less protection against incrimination in a future criminal trial than an exercise in that later criminal trial. *See Lefkowitz*, 414 U.S. at 77. Furthermore, it would be incongruous to claim that the prosecution can comment on invocations of the privilege in a criminal trial so long as that trial is separate from the civil

proceeding in which the privilege had been invoked, in light of the finding in *Chavez* that it is the use of compelled testimony in a criminal trial that violates the very core of the Fifth Amendment. *See Chavez*, 538 U.S. at 777. Moreover, such a reading of the *Johnston* rule would be a drastic limitation of a right the courts scrupulously protect. *See Johnston*, 127 F.3d at 398. In the ringing words of the Fifth Circuit, "Our system of justice rigorously guards the right of an accused to remain silent and not to testify. Prosecutors are obligated never to attempt to sway a jury in any way because of the exercise of an accused of that right." *Id.* This court declines to find a limitation to the rule against comment where the government has not cited and this Court has not discovered any case law to indicate one exists.

The Supreme Court's decision in *United States v. Robinson*, 485 U.S. 25 (1988), does not change this result. There, the Court found no constitutional violation when the prosecution commented on a defendant's failure to testify after defense counsel specifically argued that the defendant had not had a chance to present his version of the facts. *Id.* at 32 (holding that "the prosecutor's statement that [the defendant] could have explained to the jury his story did not in the light of the comments by defense counsel infringe upon [the defendant's] Fifth Amendment rights"). Here, by contrast, Defendant has not sought to capitalize on his assertions of his Fifth Amendment rights. Should Defendant later do so then the Court will address the issue, but at this stage of the proceedings *Griffin's* general prohibition against comment applies with full force.

The line of cases dealing with use of a defendant's pre-trial silence are also inapplicable here, and even if they did apply, would not change the outcome. *See, e.g, Doyle v. Ohio*, 426 U.S. 610 (1976) (prohibiting use of *post-Miranda* warnings silence for impeachment); *Jenkins v.*

6

*Anderson*, 447 U.S. 231 (1980) (allowing pre-arrest silence to be used for impeachment); *Fletcher v. Weir*, 455 U.S. 603 (1982) (allowing silence post-arrest, pre-*Miranda* warnings to be used for impeachment); *Wainwright v. Greenfield*, 474 U.S. 284 (1986) (prohibiting use of post-arrest, *post-Miranda* warnings silence as substantive evidence of guilt).  First, the naturalization interview is a civil proceeding, so that cases dealing with silence in pre-trial criminal investigation are inapposite.  Though the naturalization interview has some investigatory aspects, it must nonetheless be conducted in accordance with immigration regulations.  *See Walji v. Gonzales*, 500 F.3d 432 (5th Cir. 2007) (interpreting statute and regulations to require immigration officials to follow a prescribed order when adjudicating naturalization applications).  In light of these procedural requirements, the Fifth Circuit has already characterized the exact interview at issue here as a "civil *adjudicatory* process."  *Posada Carriles*, 541 F.3d at 357 (emphasis added).  Defendant's invocations of the privilege, then, while pre-trial in the sense that they occurred before Defendant was charged with the instant criminal offenses, did not occur prior to Defendant's interactions with the government, or even prior to Defendant being taken into custody, which scenarios the pre-trial silence cases typically involve.  *See* Order, ECF No. 44 (describing the history of Defendant's detention between May 17, 2005, the date he was taken into custody, and April 6, 2007, the date the Court ordered that Defendant be released from custody); Tr. 09-0983 (noting the date the naturalization interview began as April 25, 2006).  Instead, Defendant's invocations occurred within a civil proceeding.  Therefore, cases dealing with silence in pre-trial criminal investigation are inapposite.

Second, even if the naturalization interview were a form of investigation instead of adjudication, the pre-trial silence cases would not apply because there was no silence susceptible

of multiple possible inferences or interpretations.  Instead, Defendant here affirmatively claimed the protection of the Fifth Amendment, so his refusal to answer certain questions supports only the conclusion that the answer might tend to incriminate him.  This is in contrast to the defendants' silence in the pre-trial investigation cases, which supported inferences proving actual substantive guilt or impeaching a defendant's testimony.  *Compare* Tr. 09-1211 ("Mr. Posada: 'I take the Fifth Amendment'"), *with United States v. Zanabria,* 74 F.3d 590, 593 (5th Cir. 1996) (finding no error in prosecutor's references to fact that "prior to his arrest [defendant] said nothing" about threats to his family, where the defendant asserted a defense of duress to narcotics trafficking charges).

       Finally, an analysis of Defendant's invocations through the prism of the pre-trial silence cases still leads to the same conclusion that the invocations should be excluded.  Defendant's naturalization interview occurred while he was in detention, as noted above, and he only invoked the privilege well after he had received a *Miranda*-style warning in that interview.  At the beginning of the interview, Adjudications Officer Bolaños told Defendant,

> Any statements you make today can and may be used for any purpose in any legal or administrative proceeding. . . .  If you feel a truthful answer to a question would tend to incriminate you, you can exercise your constitutional right against self-incrimination. If you lie or intentionally give misinformation, you may be subject to criminal or civil penalties or barred from immigration benefits, including naturalization.

Tr. 09-0986.

In a criminal case, a defendant's silence after *Miranda* warnings have been given cannot be used against him, either as substantive evidence of guilt or to defeat a defense.  *Wainwright*, 474 U.S. at 292 (holding that the state cannot "give[] warnings to protect constitutional rights and implicitly promise[] that any exercise of those rights will not be penalized," and then "make use

of the defendant's exercise of those rights in obtaining his conviction"); *United States v. Salinas*, 480 F.3d 750, 757 n.4 (5th Cir. 2007) ("Due process . . . generally prohibits the use of a defendant's post-*Miranda* silence as substantive evidence of guilt."). Thus, even if the Court were to treat the naturalization interview as a stage of investigation instead of adjudication, the case law applicable to post-*Miranda* silence during investigations prevents the government from using Defendant's invocations.

Application of the general *Johnston* rule prohibiting prosecutors "from commenting directly or indirectly on a defendant's failure to testify in a criminal case" to the facts of this case is therefore straightforward. *See Johnston*, 127 F.3d at 396. Whether analyzed under the "manifest intent" prong of *Johnston* or the "naturally and necessarily construe" prong, any of the government's arguments based on Defendant's invocations would be improper. *See id.* With regard to the first prong, the government's manifest intent would be to make some comment on the invocations if they are admitted because it would seek to use them to establish Defendant's comprehension of the interview or the difference between truthful and dishonest testimony. For these purposes, it does not matter whether the government's purpose would be to draw an inference of guilt or make some other point; "[t]he fact that the prosecutor [would] not [be] attempting to have the jury infer guilt due to the defendant's failure to testify does not render the statement permissible." *Id.* at 398. The government's manifest intent would be to comment on Defendant's exercise of the privilege against self-incrimination, which *Johnston* does not allow. *See Johnston*, 127 F.3d at 396.

Similarly, under the second prong, the jury would naturally and necessarily construe the government's argument as a comment upon the invocation of the privilege, since the comment

9

would be exactly that. The government would necessarily direct the attention of the jury to Defendant's invocations to prove that those invocations establish Defendant's comprehension of the proceedings and the nature of his testimony. Viewed under either prong, all of the government's arguments would always begin with a reference to Defendant's invocations of the privilege because that testimony would be the very basis of the government's arguments. This would be improper. *See id.* at 396. Unless and until Defendant somehow places his invocations at issue during trial, the Constitution forbids the government from referring to them. *Id.*; *Robinson*, 485 U.S. at 32.

### C. Exceptions to the Rule Against Comment

The government cites various narrow categories of exceptions in an attempt to avoid the reach of this general rule, but these exceptions are not applicable here. The Court addresses each possible exception in turn.

#### i. Adverse inferences in immigration court

The government cites multiple cases for the proposition that immigration officials may draw adverse inferences from an alleged alien's silence. Gov't's Submission 2 (citing *Lopez-Mendoza*, 468 U.S. 1032; *Cabral-Avila v. INS*, 589 F.2d 957 (9th Cir. 1978); *Hyun v. Landon*, 219 F.2d 404 (9th Cir. 1955)). While the proposition is accurate as a statement of law, it is inapplicable to the present case, for the simple reason that this case is not a civil immigration proceeding. Whatever leeway the adjudications officer may have had during the naturalization interview, the government has charged Defendant under a criminal indictment, so the general rule for criminal trials applies, prohibiting comment on invocations of the privilege. *See Johnston*, 127 F.3d at 396.

### ii.     Waiver of the privilege

The government correctly notes that the prosecution may properly comment on a defendant's refusal to answer questions when that defendant voluntarily testified earlier in his or her criminal case on the same or reasonably related topics.  *See United States v. Hernandez*, 646 F.2d 970, 979 (5th Cir. 1981).  But Defendant has not yet taken the stand in this case.  Rather, the evidence at issue is Defendant's testimony and claims of privilege in the earlier civil proceeding, and the government has pointed to no assertions there that were improper based on Defendant's waiver of the privilege.  Therefore, the waiver doctrine has not rendered improper any assertions of the privilege.  Should Defendant take the stand in this case, then the waiver doctrine might become relevant, but at present it is inapplicable.

### iii.    Comment on improper invocations of the privilege

The government also argues it may comment on invocations of the privilege that were improper for other reasons, but again does not show that any of Defendant's successful invocations were improper.  Yet, even granting for the sake of argument that some claims of the privilege in the naturalization interview were improper, Defendant still should not be penalized at this late stage for the error. When the privilege "is claimed and granted outright, [the defendant] has every right to expect that the ruling is made in good faith and that the rule against comment will be observed." *Johnson v. United States*, 318 U.S. 189, 197 (1943); *Doyle*, 425 U.S. at 619 n.9; *United States v. Anderson*, 498 F.2d 1038, 1044 & n.28 (D.C. Cir. 1974), *aff'd sub nom. United States v. Hale*, 422 U.S. 171 (1975).[4]  Here, the government told Defendant he

---

[4] The rule in *Johnson* was laid out for assertions of privilege and comment later in the same criminal proceeding, but there is no reason why the same rationale should not apply to an assertion in one proceeding and comment in another. In both situations it is unfair to penalize the claim of the privilege when the defendant has no chance to change his

11

had the right to assert the privilege. *See* Tr. 09-0985 ("Officer Bolaños: 'If you feel that a truthful answer to a question would tend to incriminate you, you can exercise your Constitutional right against self incrimination.'"). The government has not indicated Defendant was told that successful assertions of the privilege could be used as evidence in later criminal actions, or even that improper assertions of the privilege could be so used. In light of the information provided to Defendant, he had "every right . . . to expect that the rule against comment" would be observed and no reason to expect that it would not be. *See Johnson*, 318 U.S. at 197. For, "even if it was error to allow [Defendant] to invoke his privilege, it [would] nonetheless [be] improper to permit prosecutorial comment because [D]efendant w[ould] thereby [be] 'deprive(d) . . . of an intelligent choice between claiming or waiving his privilege.'" *Anderson*, 498 F.2d at 1044 (quoting *Johnson*, 318 U.S. at 198) (ellipsis in original)

      Though the government has not pointed to any specific instances of the adjudications officer overruling one of Defendant's invocations in the naturalization interview or otherwise finding it improper, even if the adjudications officer had done so, that would not change this analysis. The government's reliance on *United States v. Rice*, which it cites in support of its request to be allowed to comment on improper invocations, is misplaced. *See United States v. Rice*, 52 F.3d 843 (10th Cir. 1995). In *Rice*, the defendant had tried to assert the privilege on behalf of certain corporations that he controlled in response to the government's request to produce certain documents. *Id.* at 845. In a civil contempt hearing, the defendant's assertion

---

decision about whether or not to claim it. In fact, the *Johnson* rule should apply with even more force for assertions by a witness in one case and comment in a later criminal case against the witness. In such a scenario, the witness will have less reason to expect that a prosecutor in a criminal trial will be allowed to comment on the assertion of privilege, because there was no active criminal prosecution against the witness at the time the witness claimed the privilege.

was overruled because corporations cannot assert the Fifth Amendment privilege. *Id.*; *see Braswell v. United States*, 487 U.S. 99, 102 (1988). Later, after his conviction in a criminal trial, the defendant sought a new trial based on a prosecution witness's comment on the defendant's unsuccessful assertion of the privilege. *Rice*, 52 F.3d at 845. After pointing out that it was wholly impossible for the defendant to "properly invoke the privilege, the court held that the prosecution witness's comment was not improper. *Id.* at 845-46. Here, by contrast, Defendant was entitled to assert the privilege, as the adjudications officer advised him. Thus, unlike in *Rice* where the privilege was "nonexistent," *id.* at 846, only specific invocations of Defendant's right could be found invalid. The Tenth Circuit's holding in *Rice* is therefore inapplicable to the facts of this case.

Furthermore, the defendant in *Rice*, through his choice of defense, put his invocations of the privilege at issue. *See id.* The defendant there argued that he had actually provided the relevant documents in response to the government's request, and that the government had subsequently lost them. *Id.* As the court observed in its ruling, the government only referred to the defendant's invocation of the privilege to rebut this evidence and establish that the defendant had either failed to produce the documents earlier or had recently fabricated his version of events. *Id.* In this respect, the holding in *Rice* can be seen as an application of the Supreme Court's ruling in *Robinson*, allowing comment on invocations to prevent a defendant from taking unfair advantage of the rule against comment. *See Robinson*, 485 U.S. at 32. Without some showing that Defendant has sought to capitalize on the rule against comment for an improper purpose, *Robinson* and *Rice* are inapplicable here, and the *Johnston* rule applies to prohibit

comment on Defendant's invocations.[5]

### iv. Remote or ambiguous references to invocations of the privilege

The government's remaining argument consists of a list of reasons why it would want to refer to Defendant's invocations, in an apparent attempt to create a new category of situations when comment should be allowed. Gov't's Submission 4-6. Even if the Court agreed with all of the government's rationales, which it does not, as explained below, every argument begins with the fact that the government must explicitly point out that the Defendant invoked the privilege, and that it cannot do for the reasons laid out above.

Moreover, the government's proffered arguments do not qualify for the limited exception the case law provides for commenting on invocations for some ancillary purpose. Courts typically grant this type of exception for inadvertent, vague, or remote references to a defendant's failure to testify, not for direct argumentation that uses as its starting point a defendant's invocation of the privilege. *See, e.g.*, *United States v. Sandstrom*, 594 F.3d 634 (8th Cir. 2010) (finding no violation when prosecutor accidentally referred to the defendant's lack of convincing argument instead of the defense's lack of convincing argument); *United States v. Grosz*, 76 F.3d 1318 (5th Cir. 1996) (noting that the prosecution may properly refer to defense's failure to explain or contradict the prosecution's evidence); *United States v. Goodapple*, 958 F.2d 1402 (7th Cir. 1992) (rejecting claim that including defendant's name on a list of possible witnesses read to potential jurors was a comment by court on defendant's failure to testify). The government's desired direct references to the invocations of the privilege would not be the sort

---

[5] Even if *Rice* applied and Defendant's invocations could be admitted as evidence without offending the Fifth Amendment, the Court finds that comment on the invocations would be unfairly prejudicial for the reasons set forth below.

of incidental, accidental, or ambiguous comments covered by this exception.

### v.  Impeachment

Finally, the government requests that it be allowed to use Defendant's invocations to impeach him, should he take the stand.  *See* Gov't's Submission 7 n.4.  But the general prohibition on comment also applies to impeachment of a witness with an invocation of the privilege.  *Doyle*, 426 U.S. at 619.  A defendant whose post-arrest silence was induced by governmental action or promise cannot be penalized by having that silence used later to impeach him.  *Id.*

> "[I]t does not comport with due process to permit the prosecution during the trial to call attention to [a defendant's] silence at the time of arrest and to insist that because he did not speak . . . at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony."

*Id.* (quoting *United States v. Hale*, 422 U.S. at 182-83 (White, J., concurring)).

Silence at trial is analogous to the post-arrest silence at issue in *Doyle*, so the tests for prosecutorial comment on the two are the same.  *Mora*, 845 F.2d at 235.  Here, Defendant's silence was induced by the government's warning at the beginning of the interview that if he felt "a truthful answer to a question would tend to incriminate [him], [he could] exercise [his] constitutional right against self-incrimination."  Tr. 09-0985.  Consequently, it would be improper for Defendant to be penalized now for invoking his rights by having that invocation used to impeach him.

### D.  Exclusion Based on Rule 403 of the Federal Rules of Evidence

Even if the government were able to overcome the constitutional barriers to introducing evidence of Defendant's invocations of the privilege, Defendant has objected to their admission under Federal Rule of Evidence 403.  Under this rule, "evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Here, the probative value of the government's evidence is low, while the risk of unfair prejudice is high, arguing strongly in favor of exclusion.

First, the government states that it needs to use Defendant's "testimony as a whole" to prove the obstruction of justice charge and establish that Defendant could distinguish between truthful and dishonest testimony. Gov't's Submission 4. But invoking the Fifth Amendment in response to some questions but not others has only a slight bearing on the ability to distinguish between true and false testimony. A jury might infer that Defendant's answers to other questions were truthful if Defendant answered most questions posed to him but only invoked the privilege in response to a few. However, such an inference carries little weight, because there are many other possible explanations for such a pattern of answers. For example, Defendant could have simply believed false answers to other questions would be less readily detected. In contrast with this weak probative value, the chance of unfair prejudice is high, because the jury could be swayed by a belief that Defendant committed the acts about which he asserted the privilege, even though Defendant is not charged with having committed them.

Also, this line of argument seems to imply that Defendant's assertions of the Fifth Amendment were an obstructionist tactic. For this to be true, the invocations would have to be improper, which the government has not shown. After all, according to the Supreme Court in *Griffin*, comment on an assertion of the privilege "cuts down on the privilege by making its assertion costly." 380 U.S. at 614. So a conviction for obstruction of proceedings before departments and agencies based on valid invocations of the privilege against self-incrimination

would plainly impose even larger costs for the privilege than the comments found unconstitutional in *Griffin*. Because the invocations have such weak probative value but such a high risk of confusing the jury on the legal issues surrounding the privilege, or even more seriously risk leading the jury to convict based on acts Defendant has not been proven to have committed and is not charged with committing, the evidence must be excluded.

Second, the government argues that the invocations should be admitted because they help prove that Defendant understood the proceedings and their consequences. Gov't's Submission 5. While the invocations may help establish this, their probative value is fairly low because Defendant was represented by counsel. In fact, Defendant frequently invoked the privilege after specific instruction from his attorney. *See, e.g.*, Tr., 09-1202 ("[Defendant's Counsel]: 'Again, I want to instruct my client not to answer that question, based on his based on his [sic] right not to incriminate himself under the Fifth Amendment of the United States Constitution.' . . . Mr. Posada: 'I take the Fifth Amendment.'"). Moreover, many of the acts about which Defendant asserted the privilege are so controversial as to distract the jury and possibly lead it to convict Defendant for reasons other than his guilt on the actual charges set out in the superseding indictment. Therefore, the government will not be allowed to make such an argument based on Defendant's invocations of the Fifth Amendment.

Third, the government argues that because Defendant claimed a lack of memory in response to certain questions and invoked the Fifth Amendment in response to others, this somehow indicates that the claims of lack of memory were false. Gov't's Submission 5. The Court does not agree that the invocations tend to show that Defendant falsely claimed he could not remember the answers to other questions. If anything, choosing to assert the Fifth

17

Amendment when one knows that a lie might result in a finding of removability indicates that Defendant was speaking truthfully in the other parts of the proceedings, since he presumably was taking care to avoid perjuring himself.  Additionally, because the government does not claim that Defendant improperly asserted the privilege, any connection of the invocations with allegedly perjurious claims of lack of memory is spurious and improper.  Without a better explanation of how this evidence would tend to prove anything relevant to Defendant's guilt, it must be excluded.

### III.   CONCLUSION

For the foregoing reasons, the government's Motion, ECF No. 378, is **DENIED**. Defendant's Motion, ECF No. 320, is **GRANTED** in part and **TAKEN UNDER ADVISEMENT** in part.  As specified in the appendix to this Order, the Court **GRANTS** in part Defendant's redaction requests.  The Court **TAKES UNDER ADVISEMENT** all of Defendant's remaining requests and will rule on them at the status conference.

**SO ORDERED.**

**SIGNED** on this 1st day of November, 2010.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE